Mr. Donovan, may I please have the floor? Mr. Robinson, 20-year-old black man, was hanging out Saturday morning with his friend, his next-door neighbor, and his friend went to sell a couple of stones of heroin to a lady that had called for 20 to 40 bucks. After the sale of that heroin, and if I'm, the court will indulge me, I thought, if this is Brown's car, this podium, and the bench is Parker Springs Road, this would be Hardin Street, and we, and Brown was approaching the bench, which was a T, from Judge Vinson's side, trumps a police car. Officer Easterwood is standing to the front and to the right of Brown's vehicle between Judge Carnes and Judge Vinson. Brown says, two white guys jumped out and raised guns and started firing, and what did he do? He turned to the left. The shooter, Officer Easterwood, says, I saw him slow down. I saw him veer to the left, and then I shot two more times, and it was those two shots that killed the passenger, Calvin Robinson, as he turned left. You're saying the second set of shots? Yes. The only thing that makes sense, and of course all inferences are drawn. You don't have any problem with the first two sets of shots? No. First set. But the, Mr. Robinson was shot in the back, came in back here on this shoulder, it went forward and downward according to the autopsy. All that to the side, if Easterwood was telling the truth about having seen the firearm on the console or in the seat next to the passenger, he would lose. If he's reaching for it, if he says yes, if he saw him reaching for it, he would lose. Even if he didn't seem to be reaching for it, if there is a vehicle that speeds it, the officer turns and there's a firearm in the car, but we don't have to discuss that. Your case is that there's a credibility contest between Easterwood on one hand saying the gun was there and on the seat, and his partner having said the same thing on one side of the testimony, and on the other side of the testimony, Brown said no, that wasn't where the gun is, he couldn't have seen it in the seat, and the passenger did not reach for it. I mean, that's your case, and that, I mean, your argument is this is summary judgment, and there's a genuine issue of material fact, and regardless of the number of convictions Brown's got, my client, the estate, has a right to take that to a jury. It's simple, and it doesn't matter where the car turned or didn't turn, if the decedent was reaching for a pistol or if there was one in close proximity, this is an entirely different case. But if he wasn't, your best evidence is that Easterbrook says I aimed at the passenger. I agree, Your Honor. Is there anything more complicated than that? No. No. But then what the district, I don't guess it matters what the district judge did because it's de novo, but she basically said, well, we're going to get rid of the gun because that's the dispute as to whether it was there or not. But not only am I going to get rid of the gun, I'm going to get rid of all of Officer Easterwood's testimony as to why he shot Robinson because, and we're entitled to construe all of the evidence. Yeah, she said it was a personal subjective motivation, but... That's the argument, Your Honor. I mean, that's it in a nutshell. And it's not just Brown's testimony about the gun. You've got Ms. Faust who bought the drugs, didn't see the gun. None of the officers are hollering gun, gun, gun. But Ms. Faust actually saw it, didn't see it earlier, and it's not clear from what I could find that she was at a perspective in which she would have seen the gun. She doesn't say there was no gun on the front seat or in the console. She said, I didn't see the gun when I went and bought the drugs, which was before the events we're talking about. Right. I thought he said he didn't see it in his car. The car was still moving while the first two shots were fired, while the second two shots were fired, and while the third two shots were fired, right? Correct. Never, it was basically almost instantaneous, bang, bang, bang, bang, bang, bang. If you look at the police diagram and the shell casings, generally he shot twice, he hit Robinson, and then he moved behind the car and shot again another two shots for the third time. But the problem is that the third and fourth shots, he admits he shot at the passenger, which would have done nothing to stop the car if the car were what he feared, right? Correct. That's the problem. Yes. And I do want to talk for a minute about Sergeant Rankin and the case we have against him because he of course did not do the shooting. But everything about this stop was wrong. It was an unmarked car. It was plainclothes policemen. Which is prototypical in drug cases. If you go out there with a black and white, you're not going to catch anybody selling drugs. Well, in this case, he didn't notify anybody. He was making an arrest for a high felony stop, and those are all the normal procedures. But they say you've got to have violation of a regulation in order to get to this, to get a cause of action. The regulation is if you're pursuing somebody, do not box them in because that's a dangerous situation. They say, well, we weren't pursuing him. I'm coming this way, Brown's coming this way, police officers are coming this way. They're coming to stop him. There's no doubt. They are coming to intersect and stop him. They are pursuing him. They're not pursuing him from the rear. I thought the review board had determined there was no violation of the, whether you call it the rules or the regulations. It's their rules and their regulations, they can interpret them how they want to. They had probable cause to stop the vehicle from personally observing what they thought was a drug transaction. Did they not? Yes. But they were pursuing the vehicle. So they could stop it, but they couldn't pursue it? No. You can, I'm sorry, Your Honor, if you're pursuing a vehicle, you can't try to box the vehicle in. Yes, you can. Yes, you can. The Constitution doesn't say you can. We don't say you can't. The Hueytown Police Department regulation said don't do it. So take it up with the Hueytown Police Department. This is the lawful death action against Rankin. I thought you were still in Section 1980. Give us a hand signal when you're moving on to the next one. Can I get back for a moment to the Easterwood issue? So your, I mean, really your whole case rises and falls on whether there's a material disputed fact over whether, whether there was a gun that was accessible to Brown or Brown reached for the gun when Easterwood shot at him. Would you agree? Yes. Okay. So why don't you give us the best facts you have for why there was a material disputed fact on that issue? The best evidence. Who said what? Brown said that he got the gun the night before, he owned the gun, he went out and his friend who was not Robinson, when they went out that night before, had the gun and stuck it in the car. Brown says, I forgot the car, the gun was even there. He says, Robinson did not grab the gun, the gun was not on the console, Robinson, quote, is not that type of guy. He says, I told the officer Rankin when he got me out of the car, I told him about the gun and it was only at that time that Rankin went back to the car and get the gun. And if you think about it, if you're a police officer and you make a stop and there's a gun on the console, you're not going to pull any passenger out and assist him until that gun's removed. And also there were hollered guns, so I think all of that evidence indicates that that gun was not there. Plus, on a... Is there any evidence that the officers, as a matter of course, hollered gun if there's a gun? Yes, our expert says that, Your Honor. Okay, thank you. That's just it. And in addition, at noontime, in Vest Morale, Alabama, on a bright sunny day, he says, I'm looking down through the windshield and the passenger's window and I see the gun. And Robinson, I think, is 6'2", you know, he's much larger than me. He's a large man. It doesn't make sense. If the gun was on the console, why in the world would Rankin move it? Why would he take it off the console, walk around and put it outside the door of Calvin Robinson? There's no reason except the gun wasn't on the console.  He knew something was wrong. Focusing on Brown's testimony, did Brown not say that it was under something or... He said it was stuck between the seats. Stuck between the seats. Yeah. And wasn't visible. Correct. Okay. And that's where the size of Robinson also fits in as the best case scenario. You just can't see through people. So you put it to a jury and let them decide whether Brown or East or Wood is telling the truth. Yes, sir. Okay. I think we've got your argument. You've got three on reply. Let's hear from Ms. Hart. Ms. Hart, it would be helpful to me if you would start with that point. Why does not the conflict in testimony between Brown and East or Wood justify denial of summary judgment and putting it to the jury? Okay.    I'm going to start with Ms. Hart. May it please the court. Again, my name is Christine Hart and I represent L.B. Rinkin and Todd Easterwood, the appellees in this action. And we ask that you affirm the opinion of the district court. Regarding the gun, we don't agree that it's a material issue of disputed facts such that a jury should decide this issue. Brown testified that... I'm sorry, you agree or don't agree? We don't agree that it's an issue of disputed fact that should be held over to a jury. So you're not focused on materiality, you concede it's material. Yeah, I don't concede that it's material either, Your Honor. Even if an officer doesn't see the passenger has got a gun, doesn't see a gun, doesn't think a gun's within reach, he can shoot the passenger dead when the car is speeding away. My point, Your Honor, is that from his perspective, from the perspective of a reasonable officer, he observed what, he observed Robinson reaching for a handgun. No, no, no, no, no, no, no, no. You're saying it's not a material dispute as to whether Robinson reached for a handgun or he saw Robinson reach for a handgun. And now you're telling me he saw Robinson reach. If it's not a material fact, then it doesn't matter that he didn't see Robinson reach. No, Your Honor, I agree that I think it's relevant whether he saw or not. Not relevant, not relevant, I'm sorry, material fact. So if he saw Robinson reach for a gun, then your position, of course, is the defendant wins. But if he didn't see Robinson reach for a gun and didn't see a gun on the console or deliberately shot Robinson dead, then you lose, do you not? No, I don't. So an officer can shoot dead a passenger who is unarmed, as far as the officer knows, in a car that's going in the opposite direction. The passenger's not driving or assisting with the driving of the vehicle and the officer can deliberately kill the passenger. Your Honor, in the context of this particular case, the officer had already been in a position where he needed to fire his weapon at the car because it was going quickly at him and that's undisputed that it was moving quickly in his direction. But how does firing a gun at the passenger prevent the car from moving at him? The car was in extremely close proximity to him. But the passenger's not driving it. So, I mean, even if the passenger's now dead, that doesn't prevent the car from running him over, does it? Well, he was trying to end the conflict, end the hostile situation. Let me ask you. Qualified immunity is an objective standard. It requires what a reasonable officer would do under the circumstances. The officer's subjective thoughts are really not material to that, are they? Well, but you're looking at... What a reasonable officer would do under similar circumstances. Correct. But for a qualified immunity standard, you have to find that it's so far beyond what is reasonable for an officer to do in order to... You don't understand, counsel. That was a question of softball in your favor. Yes. The point being, your argument ought to be, it doesn't matter whether Officer Easterbrook, the defendant, deliberately shot him to death or not. It's whether a reasonable police officer, in those circumstances, would have thought he could use deadly force. Correct. Yes, I agree with that, Your Honor. But the problem is, I view it, and I'm listening to your arguments, but I view it as the question being whether a reasonable police officer could think that he could deliberately shoot to death an unarmed passenger or a passenger that he didn't know whether was armed or not in a car that was speeding away. And, Your Honor, my initial response to that would be to go back to, I think, where I thought I was headed at the beginning of my argument. It was to lay out the facts which show that I don't think that's a dispute of fact. I don't think that the plaintiff met his summary judgment burden on the presence of the handgun where it was located next to the passenger. What we've done so far is discuss the second component, which is if there is a dispute of fact. But now, please take some time and talk about why there isn't a dispute of fact. Sure. So Brown testified, and he both testified in a deposition in this case very late in the game after briefing had concluded. And he also gave a statement to the Alabama Bureau of Investigation where his testimony was that there wasn't no gun pulled out, that he never grabbed it, that I never saw him get the gun. Well, in his deposition, he also testified that he was looking to the left where he was driving the entire time. And so the district court or this court on de novo review could disregard any Brown's testimony that he never saw, never would have ever saw during this conflict while Brown was speeding away, whether or not Robinson was reaching for a handgun in that moment. So we don't construe the evidence in the light most favorable to the non-moving? Well, when there's an inconsistent story and when it's not... We got case law on it. He tells an inconsistent story. Any witness tells an inconsistent story. You let the jury decide which part of the story, which story is true. You don't say we're going to pick the one that is most favorable to the movement because he's bound to be lying if he's telling two different stories and lying in your favor as opposed to against you. But not only did he, Your Honor, not only did he say that he never saw him grab the gun, that's consistent with Easterwood's testimony where he said he never saw him grab and pick up the gun. He saw him, quote, reaching across toward a gun, grabbing at the gun. He testified, I never saw him pick it up off the console. No, sir. And it's undisputed that there was a gun in that location. Brown said that there was a gun located in between the passenger and the console. Well, that's different though, right? I mean, if the gun had been located between the passenger seat and the console, then it wouldn't have been on the console and it wouldn't have been able to be viewed from the perspective of the officer. Wouldn't you agree? No, Your Honor, I wouldn't agree with that. It wouldn't necessarily be viewed. Lieutenant Rankin saw, when they initially got out of the car, saw the handgun. So here's the problem with that, right? We have the expert testimony that they're supposed to yell gun if they see a gun. We also have sort of the strange way in which the gun is retrieved, which a jury, a reasonable jury might be able to find, indicated that they weren't aware of the gun until Brown made them aware of where it was. I mean, isn't that a problem for the client? Doesn't that create, doesn't that support the idea of a dispute of fact? No, Your Honor, I don't believe it does because you're looking at the reasonable view of the officer in the moment that he saw Robinson reach for the handgun. You're not looking at where the gun ended up at the end. Except that aren't they tied together because if the officer can't see the gun, right, then the whole reason for shooting Brown, for shooting Calvin, is gone, right? For shooting Robinson is gone. The whole reason that he shoots him is because he says he sees the gun. If he can't see the gun, if he's lying about that, right, and I'm not saying he is, I'm just saying if a reasonable jury could conclude that he was and it's so concluded, then there would be a problem. I mean, there would be liability there, wouldn't you agree? If he were lying, if he did not actually see the gun, would you agree that there's liability for Officer Easterwood in those circumstances? No, I'm not sure there would be liability. Why not? Well, Your Honor, and respectfully, I don't want to give up the ground on that because at this point, the shooting has already started. I understand. Okay, I understand, but I need to know why. Because the shooting has already started. We're in a tense situation. We can shoot the passenger? Well, we've had cases where officers have believed they've seen a weapon and it hasn't even been a weapon at all. Here, it's undisputed that there was, in fact, a weapon there. Well, the district court accepted the plaintiff's contention that there was no reaching for the gun. I mean, that was set aside in the district court's decision, drawing all inferences in favor of the opposing party, as she had to do. So to the extent there is a factual dispute, she's already set that aside. So why are you arguing it again? Because I think it's important on de novo review for the court is going to consider whether the use of the handgun was a factor. Now, from our perspective, I think the movement of the car alone and the fact that this all happened within seconds or milliseconds even. Here's the part that I don't understand that would be helpful if you could address for me. I understand if he had fired shots three and four at the driver, I would completely understand your position. The problem here is that we are assuming, for purposes of this question, that he did not see a gun in the passenger's hand, or he did not see a gun, and he shot the passenger. That's the problem. Why was he allowed to shoot the passenger, to shoot directly at the passenger and only at the passenger, if he was afraid that the car was coming at him? Well, Your Honor, the testimony, he does testify that he did shoot at the passenger after he saw the handgun, and I don't... I know, but... I don't intend to dispute that, but I do want to point out that he also testified that the car was still moving at that point, and it was still a threatening situation, and... Forget the gun. Is it your position that an officer has a right to shoot a passenger if there is no gun in order to stop a car that's presenting a danger to him? I think the officer, I think if you're defining, how you're defining this matters, or is he allowed to shoot at the car? The cases that I've heard about... No, but he didn't say, he didn't say, that was the last two shots. He didn't say the middle two shots, he shot at the car. He said, I shot at the passenger, and he hit the passenger with one of them. Well, and to be clear, Judge, on that, there really was no evidence before the district court regarding which shot hit... It doesn't matter, though, because then there could be a material dispute effect over which one it was. The question is, right, you have said that it doesn't matter whether or not there was a gun, okay? And so the question is, why doesn't it matter whether there was a gun? In other words, assuming there was no gun, why is it your position that the officer could choose to shoot at a passenger in the car who's unarmed? Well, Your Honor, I'm assuming for the purposes of your question that you can contemplate an officer believing that there was a handgun, because I think it's... I mean, Officer Easterwood testified... Okay, but... ...that he believed that he saw a handgun, and we can't... I understand that argument that you're making. That's a different argument, right? Your argument is the officer thought there was a gun, but you also argued that it didn't matter whether the officer thought there was a gun because the car was coming at him. And what I'm trying to figure out is, why does it matter if the car was coming at him? Why would he be allowed to shoot an unarmed passenger? Which is a different question from whether he was armed. Do you understand what I'm saying? Yes, I understand what you're saying, but I think that goes back to the fact that this happened all very quickly and that intense situations where there is a rapidly evolving set of circumstances, the officers have to make quick decisions, and we're not entitled to the benefit. But how would a reasonable officer... Why could a reasonable officer think that shooting an unarmed passenger would assist in the situation and protect himself when the unarmed passenger is clearly not controlling the car that is the thing that is putting the officer in danger? He might not be controlling the passenger, Your Honor, might not be controlling the car, but we're in a confrontation at this point where shots are even fired and the car has not slowed down and has not stopped. What if the unarmed passenger is a hostage? You just shoot him because that's... I mean, why would there be a difference? Well, the officers just witnessed the two of them engage in a drug transaction and are immediately moving to arrest them. It's a felony drug stop. They can reasonably believe that they're armed in this moment and that the moment at which the vehicle, Brown's vehicle, decided to engage in threatening behavior against the officers... Well, let me ask it to you this way. If the unarmed passenger were a hostage and the same thing were happening as far as the vehicle coming towards the officer, could the officer shoot the unarmed hostage? It's all about what the officer observed and what a reasonable officer in that situation observed. They wouldn't necessarily observe that they were a hostage is my point. Okay, I'm saying the officer knows it's a hostage, okay? Could the officer shoot the hostage? It depends on the situation, Your Honor. I'm telling you what the situation is. All of these cases are so different. Well, they're not really, though, and let me tell you why. Because if the officer could not shoot the hostage in that situation, then why could he shoot the unarmed passenger who's presenting precisely the same threat to him as the unarmed hostage? The whole justification for his being able to shoot the passenger is that the passenger represents a threat to his safety. Yes, Your Honor. What is the threat to his safety that the passenger represents? It's his presence in the vehicle that has been moving aggressively toward the officer. Why is that any different than the unarmed hostage? I don't think it necessarily is, Your Honor. So he could shoot the hostage then? In a hostage situation, if it was obvious to the officer that they were engaged in a hostage situation, I mean, it could depend on a variety of factors, but I suppose one could argue that it wouldn't be appropriate for an officer to shoot at an unarmed hostage, but that is so far from what we have here that it's difficult for me to even make the comparison because, again, they had just witnessed these two individuals engage in a drug transaction. It was reasonable to believe they were armed from the beginning, and, in fact, they were armed. We don't sit here and try to make... Let me ask you a question. It seems to me like your biggest argument to the jury about why the officer knew or believed there was a gun is that he fired the shot at the passenger. In other words, everybody knows, except apparently you in making your legal argument that you don't shoot an unarmed passenger to stop a car. Therefore, the fact that he shot indicates that's what he believed. That's a jury argument. But here's my question. Was the officer asked, did you think you could shoot at the head of an unarmed passenger in a vehicle or would you have shot had you known that he didn't have the gun? Did anybody ask that? I'm sorry, Your Honor. I'm having a hard time understanding that. Well, it's simple. His testimony was taken, was it not? Officer Easterwood? Yes, Your Honor. Was he asked, if you had known the passenger was unarmed, would you have shot at him? That's a simple question, counsel. What's the answer? Was he asked for that? Your Honor, I don't remember one way or the other. Isn't it an important question? I think what's important is what actually... No, no, no, no, no, no, no, no. I didn't ask you what you thought was important. I asked you whether you thought that was important, whether he thought, believed, at the time he squeezed the trigger, he could shoot an unarmed passenger. Isn't that important? For purposes of whether the law is clearly established. For purposes of whether you've got a jury trial in this case. I'm asking you that question. You don't have to figure out the legal ramifications of it. Just try to figure out whether it matters or not. If you tell me it doesn't matter what the officer believed, I understand. That's a viable position. But I'm just trying to figure out why nobody asked him that. I'm not sure whether or not he asked that. Okay. We'll hear now from Mr. Dolphin. And let me begin with my question to you. Was the officer asked that? No, Your Honor. Okay. And here's why we didn't ask it. We've got expert opinion saying no reasonable officer would have done that. And that under those circumstances that if he didn't see a gun, he should not have shot him. You misunderstand. And I'm getting too far into the trial, I suppose. But if I were her and I were the trial lawyer, I would argue to the jury, there was a gun there. He says he saw it. This guy with a long criminal history says he didn't. And let me tell you how else we know he saw it. Because he shot the man he thought was reaching for the gun and had the gun. And everybody knows, and we don't contest, you don't shoot an unarmed passenger to stop a gun. You shoot an unarmed passenger to stop somebody from getting a gun. That's what the argument would have been. I know it's easy to look in hindsight, but it's difficult for me to believe that somebody didn't ask the officer what he understood to be his authority to use deadly force in a situation in which he didn't see a gun. He did not admit he did not see a gun. And I did not pose that hypothetical. Let me ask you this. It's in my expert's ability to answer that question. Let me ask you this. Judge Vinson hit upon a point. It's what a reasonable officer in that position would have thought and would have believed, would have done. Could a reasonable officer have thought that the use of deadly force was necessary? We have said countless times that deadly weapons, firearms, are part and parcel of the drug trade. There's an opinion that says they go together like peas and carrots, that where you've got the drug trade going on, chances are you've got a weapon. Now, why doesn't that hurt your case at this stage in that a reasonable officer could have believed that these two drug dealers had a firearm within easy reach because that's what drug dealers do? I can go back to Judge Rosenbaum's hostage situation. But he wasn't a hostage. Let me ask you something. Did they testify to that? Did Easterwood or Rankin testify that they thought that they had guns because they were dealing drugs? I mean, if they had testified to that, maybe they could do that. But did anybody testify that they thought that they had guns because they were dealing drugs? No, Your Honor. Well, of course, it's an objective test, not a subjective one. The question is whether any reasonable officer could have believed that they had a firearm because they were drug dealers. And you can't get testimony on that, and expert testimony won't get you anywhere. It's a question of law about what an objectively reasonable officer could have believed. Under that theory, then every time a police officer suspects a drug transaction, he can start shooting. Not necessarily. He could believe there were firearms within reach. That doesn't justify the shooting. What justifies the shooting is the car and what's happened to the car and the fact that he needs to stop the people in the car. That's what her argument ought to be. And I started out my argument with saying the car slowed and the car veered to the left, and that wasn't anybody's testimony but Officer Easterwood who did the shooting. Are these people fleeing from the police? Easterwood said the Mazda was still driving towards me. They were still trying to run over me and kill me after the first two shots. That's what he said. That's what he threw out in the last part of his deposition. We were looking at pictures of the glass in the street where the glass was on this side of the street to show where it was when it occurred, and he throws that out almost like the mantra, well, I was protecting myself, the officers, or the general public. That's when he threw it out, and we were able to attack that, but all of his written statements about seeing the gun. That's why I don't understand why the district judge ignored all the other testimony and relied on that one statement that he voluntarily gave in a deposition. But, and the perception is that this guy was speeding away. He wasn't speeding away. I don't even, there's a jury question as to whether or not he was even fleeing the police. How many times did Counsel for Easterwood say it was a split-second decision we've got to give the police officers the benefit of the doubt? Well, this guy sees two white guys coming at him in his neighborhood, an unmarked car with guns, and for the split second, he turns left. How is he supposed to know? Doesn't he deserve that same benefit? And then they shoot, and he slows down, veers away, and starts coming to a stop. He's not running from the police consciously. Counsel? This case is not like any of the cases reported where you've got a high-speed chase on an interstate. They stop and go, they stop and go. You've got a police officer in front of the car where he speeds up a little or just moves a little bit. None of those factors are present. There's not any violence in this case until they start to box him in. And my last comment is just on the state cause of action. State cause of action is if you prove a violation of a police regulation in addition to the others, then that's good. And our violation is the Hueytown police regulation said don't box them in. Didn't the Hueytown police give him a medal? Yes, they did. Yes, they did. And they said it wasn't a pursuit. Well, you could pursue it from any angle. Thank you, Counsel. I appreciate it. We'll take that case under consideration. I know that we've got a third case. Looking out in the audience, y'all look like y'all could use a break. So we'll take about eight minutes. If we could come back in 15 after, that would be good. All rise.